## Ball et al. v. Colson et al.

(Decided Dec. 15, 1933.)

N. R. PATTERSON and JAMES S. WILSON for appellants.
JAMES H. JEFFRIES for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

This is an action for the division of land and a settlement of rent. The heirs of W. G. Colson charged in their petition that they and C. D. Ball were joint owners of 959 acres of land less a reservation and exclusion of the surface of 22.8 acres lying within the boundary of the 959 acres. Ball in his answer admitted the land was susceptible of a division and the Colsons were entitled to a settlement of the rents, issues, and profits of the land, after January 1, 1929, and that since that date he had received and had not accounted to them for one-half thereof, because of his right to a lien on the land to secure him in the payment of one-half of $3,000 of the consideration recited in the deed conveying the land to him and W. G. Colson, which he averred he had paid in excess of the portion of the consideration paid by W. G. Colson. The Colsons, by a reply, denied Ball had paid the $3,000 and pleaded the statute of limitations of five years in bar of his right to collect the one-half. They further alleged that at the time the deed was executed and delivered to Ball and Colson, the action of the Eastern Land Company against W. G. Colson and others was pending in the Bell circuit court, involving the title to the 959 acres in which the Eastern Land Company claimed title to a large portion of the 959 acres; that when the action was compromised between Colson and the Eastern Land Company, whereby it was agreed that the entire acreage was worth $12,-000, and that portion of the boundary, owned and claimed by Colson, was worth $3,000; but that the Eastern Land Company had conveyed to Ball and Colson the entire boundary. And in order to equalize Ball and Colson, it was agreed that that portion of the 959 acres claimed by Colson was worth $3,000 and the Eastern Land Company had accepted in full for its portion of

the 959 acres, the sum of $9,000 of which Ball was to pay the $3,000 to equalize him with Colson's acreage, and that he and Colson jointly agreed to pay the $6,000, the remainder of the purchase price to the Eastern Land Company for its acreage. They averred that by this agreement Colson put into the deal $3,000 worth of land and Ball paid $3,000 in cash, which, when added to the $6,000, made the $9,000 they jointly agreed to pay to the Eastern Land Company for its acreage. The deed of the Eastern Land Company to Ball and Colson was dated January 24, 1921, W. G. Colson died intestate in May, 1921, leaving the plaintiffs surviving him as his children and heirs at law, to whom the one undivided half interest in the land descended. On the pleadings and the evidence, the court dismissed Ball's counterclaim in so far as it sought to recover the $1,500, the one-half of the $3,000, and reserved all other questions for future adjudication. It will be observed that the only question to be determined on this appeal is the right of Ball to recover of the heirs of W. G. Colson the one-half of the $3,000 claimed by him to have been paid in January, 1921, alleged by him to be in excess of one-half of the consideration paid to the Eastern Land Company.

The deed recites that the consideration paid for the land was $9,000, $3,000 of which was cash and the remainder evidenced by three notes of $2,000 each payable in one, two and three years after date. Ball testified there was no other consideration than that recited in the deed. He denied that he agreed to pay $3,000 to equalize him with Colson's claim of title to a portion of the land covered by the deed. He claims that W. G. Colson and his son were present at the time he paid the $3,000 and that he told the son that he would pay the $3,000 and his father would make it up to him later; that this payment was made in January, 1921. From that date to January, 1929, the rents and profits of the 959 acres were collected by Ball and a son of W. G. Colson, as a representative of the other heirs, and regularly divided between Ball and the heirs of Colson. The heirs of Colson declared in their testimony that Ball had not at any time, until after January, 1929, intimated to them that he had paid the $3,000 or that he had any claim against their father or them on account of same. Ball does not deny their

statements. After January 1, 1929, Ball began to collect and retain the rents and profits derived from the 959 acres and to refuse to recognize the rights of the Colson heirs to one-half of them, until they begun to press him for an accounting and division, then it was for the first time he began to assert that he had paid the $3,000. Ball does not dispute that W. G. Colson was asserting, in the action of the Eastern Land Company against him, title to a large portion of the 959 acres. He does not deny that W. G. Colson was asserting title thereto, at the time, and as a part of the transaction in which the deed was executed and delivered by the Eastern Land Company to him and Colson. He does not deny that in the compromise and settlement of Colson and the Eastern Land Company, the entire acreage was valued at $12,000 and Colson's portion thereof at $3,000. He fails utterly to establish how Colson was paid for his acreage of the 959 acres to which he asserted title up to the making of the deed to them. His theory is that Colson refused to cease litigating with the Eastern Land Company for the acreage to a portion of which he claimed title, but when the Eastern Land Company came to convey its portion of the 959 acres, in accordance with the compromise, Colson surrendered his claim of title to the land for the benefit of Ball as well as himself.

Charles E. Herd, an attorney and friend of Ball and Colson, testified that he had knowledge of Colson's claiming title to a large portion of the 959 acres and of the pendency of the suit of the Eastern Land Company against him. At that time he and Ball were jointly interested in a royalty they were paying on some portion of the 959 acres and he interested Ball in purchasing the land with Colson, and induced and encouraged bringing about the compromise between the Eastern Land Company and Colson. He discussed the matter with both Colson and Ball; Ball appeared anxious to go in and make the deal. The coal business was flourishing and the 959 acres was coal land. The Eastern Land Company asked $15,000 or $18,000 for its interest in the 959 acres. Colson informed Herd that, if he could make satisfactory arrangements with Ball, he would go in with him on the proposition, and agreed that, if the interest of the Eastern Land Company could be purchased at a reasonable price, he would

go in with Ball and buy out its portion of the 959 acres. Herd states that Colson was willing to buy the interest of the Eastern Land Company and pay $3,000 of the purchase price, if Ball would pay the $6,000; that Ball and he were loading coal when he so informed Ball.

They were figuring on the basis of $12,000 for the land, but Colson wanted to take into consideration his claim of title and would not dismiss the suit, unless he got something for it, and that, if Ball would pay 50 per cent. of the purchase price, Colson would dismiss his lawsuit and pay the difference, and that it was always understood that Colson would not agree to trade unless he got pay for his land. Herd distinctly states that the total valuation of the 959 acres, including the title claimed by the Eastern Land Company and that owned by W. G. Colson, was $12,000, and that Colson expected Ball to pay the total sum of $6,000 of the purchase price to the Eastern Land Company.

Exceptions were filed to the testimony of Ball. We fail to find the court ruled on them. It was the duty of the Colsons to follow up the exceptions by having the court pass on same, and, if its ruling was adverse, to take an exception. Black v. Noel's Adm'x, 240 Ky. 209, 41 S. W. (2d) 1100.

Ball insists that he and Colson owned the land as partners, and that, notwithstanding the death of Colson, the status or partnership existing between him and Colson continued after his death as to him and the heirs of Colson, and that his right to recover the $1,500 and to enforce a lien on one-half of the land to secure it is unaffected by Colson's death. According to Ball, the benefit of the doubt as to this question, his mere declaration that he paid for Colson and himself, the $3,000 of the $9,000, and that he and Colson were jointly bound for the remaining $6,000 in the light of other facts and circumstances is not sufficient to convince us that Colson gave to Ball that interest he asserted in 959 acres, and voluntarily agreed to pay one-half of the $9,000, the total consideration due the Eastern Land Company. The testimony of Herd corroborated by the conduct of Ball, covering a period of practically eight years, in which he asserted no claim to the $1,500 as against the heirs of Colson, is sufficiently convincing to induce the conviction that the judgment of the chan-

cellor is not against the weight of the evidence, although it recites that he was controlled by the plea of the statute of limitations in reaching his conclusion.

Wherefore the judgment is affirmed.